## Richardson's Estate.

*Decedent's estates—Assignment of contingent interest—Consideration—Good faith.*

1. A person, sui juris, owning a contingent remainder in land or in personal property, may sell the same for such sum as may be agreed upon between himself and the purchaser, provided the former does not stand towards him in a trust relation, and in making the purchase acts in good faith.

2. Where a grandson owning a contingent interest in his grandfather's estate, at a time when he was heavily indebted and in danger of losing his whole interest by executions, sells and assigns his interest which was subject to prior liens of $32,000 under an agreement by which the assignee was to apply $5,000 to the payment of certain particular, urgent debts and return any of the balance of the $5,000 to the assignor, the assignee has no standing when the estate is before the Orphans' Court for distribution to claim that the assignment should be set aside, where it appears that there was no trust relation between the assignor and the assignee, that at the time of the assignment both parties had equal knowledge as to the value of the interest, that the value of such interest was subject to certain contingencies, and that the increased value of the interest at the time of distribution, which was $51,000, was due to the unexpected death of the life tenant.

3. In such a case the assignment cannot be defeated because the assignee, through a misunderstanding applied a small portion of the $5,000 to payments not intended by the assignor. The court will surcharge the assignee as to such payments, but will not declare the assignment void because of them.

Argued March 25, 1912. Appeal, No. 45, Jan. T., 1912, by William Richardson, from decree of O. C.

Phila. Co., dismissing exceptions to adjudication in Estate of William Richardson, deceased. Before FELL, C. J., MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Exceptions to adjudication.

From the record it appeared that on May 12, 1906, William Richardson assigned by writing duly witnessed, his contingent interest in his grandfather's estate to John Lloyd. At the time of the assignment this interest was subject to prior liens aggregating $32,000. Under the assignment Lloyd agreed to apply the sum of $5,000 which was the purchase money of the interest to the payment of certain urgent claims, and if there should be any balance $5,000 remaining after the payment of such claims to pay the same to Richardson. At the time of the assignment Richardson was involved financially and a sale of his interest was threatened by executions. In distributing the $5,000 Lloyd paid out three items of $381.00, $378.24 and $15.85 in a way which the Orphans' Court found improper, and he was accordingly surcharged with these amounts at the audit. When the estate of the grandfather came up for distribution after the death of the life tenant, it was found that the value of Richardson's interest was $51,000.

Other facts appear by the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to adjudication.

*Charles H. Burr,* with him *Monroe Buckley* and *Michael Francis Doyle,* for appellant, cited: Whelen v. Phillips, 151 Pa. 312; Baeder's Est., 224 Pa. 452; Jackson's Est., 203 Pa. 33; Phillips's Est., 205 Pa. 511; Singer's Est., 217 Pa. 295; Frey's Est., 223 Pa. 61.

*Henry LaBarre Jayne,* of *Biddle, Paul & Jayne,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, April 15, 1912:

The denial by William Richardson, the assignor and appellant, of the validity of the sale and assignment of his contingent interest in his grandfather's estate to John Lloyd raises the only question in the case.

The appellant attacks the assignment on the ground that it was procured by oppression, extortion, and bad faith of the assignee. A person, sui juris, owning a contingent remainder in land or in personal property, may sell the same for such sum as may be agreed upon between himself and the purchaser, provided the former does not stand towards him in a trust relation, and, in making the purchase, acts in good faith: Whelen v. Phillips, 151 Pa. 312, 322. There was no trust relation between Richardson and Lloyd. The agreement and assignment disclose fully the facts showing the estate of the grandfather and the interest of the assignor therein, and how such interest was acquired and held. Both papers were executed in the presence of witnesses. Richardson was cognizant of all the essential facts necessary to enable him to deal intelligently with the assignee. There doubtless was some difference of opinion as to the value of the assigned interest, but both parties had the same knowledge of the matter and, hence, stood on an equal footing. Subsequent events of which neither party could know show that the consideration was possibly inadequate. But that of itself cannot defeat the assignment. The interest was contingent and its value necessarily uncertain. The life tenant, while quite old, was still living, and non constat that he would not survive his son and defeat the latter's interest in the estate. As said by the learned court, owing to the several contingencies on which the estate depended, the price paid was more favorable to the assignor than many which have been sustained. It is

true that nothing was paid to the assignee at the time the assignment was executed, but this is satisfactorily explained. The agreement of the parties required the assignee to pay out of the purchase price certain indebtedness of the assignor, and only the balance, which was subsequently ascertained, was to be directly paid to the assignor. This was done, and a complete and satisfactory settlement for the full consideration was made within three months of the assignment.

If there was oppression, Richardson's creditors and not Lloyd, were responsible for it. At the time of the assignment Richardson was much involved financially, and a sale of his interest was threatened to satisfy a part of the indebtedness. To meet this situation and to prevent a compulsory sale and consequent sacrifice of his property, he was compelled to dispose of his interest in his grandfather's estate. This placed Richardson in an unfortunate position, but he alone was primarily responsible for it and must accept the consequences. He cannot be permitted to charge Lloyd with his own improvident conduct and thereby invalidate a contract made for the very purpose of relieving him from his self-produced situation. As to the alleged oppression the court in banc said: "It is not pretended that Lloyd induced Richardson to become intoxicated in order to obtain any advantage over him; there was no evidence of any oppression exercised by Lloyd over Richardson at the time of the transaction. The assignment was witnessed by Alfred L. Wanamaker, Esq., a member of the bar, who was or had been counsel for Richardson, and, as he expressed it, was attempting to act as Richardson's guardian; he had, indeed, actually endeavored to negotiate a loan from a trust company to Richardson upon the security of his interest; and, in addition, the papers were executed by Richardson's wife, who made no objection thereto."

The transaction, as declared in the agreement, was "an absolute and indefeasible sale" of the interest of the

assignor in his grandfather's estate, and the failure to account for the three items with which the court charged the assignee does not invalidate it. By the agreement, the assignee was authorized to apply a sufficient amount of the purchase price to the liquidation of the assignor's debts due to certain specified creditors. He paid this indebtedness which required all but a small portion of the consideration money, and it was his duty to pay all the balance in his hands to Richardson. The retention of a part of it resulted manifestly from a misunderstanding by both parties as to Lloyd's right to apply it to other purposes. In the release Richardson approved the payment by Lloyd of the disputed items, but the court properly held that the payments were unauthorized and should be accounted for. This carried out the terms of the sale and assignment and gave Richardson the consideration price in full. The title to the property was absolutely vested in Lloyd by the sale, and while the evidence may show a mistake in the application of part of the purchase money it does not show bad faith in the purchase, the execution of the contract and assignment, or in the performance of the agreement by the assignee.

The decree is affirmed.