## Hollowell's Estate.

Argued October 21, 1935.

Before KELLER, P. J., BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Joseph Kaplan,* with him *Milton H. Weissman,* for appellant.

*Edward J. Darreff,* of *Benedetto & Darreff,* for appellee.

OPINION BY RHODES, J., January 31, 1936:

Claudine W. Hollowell died on January 14, 1933, leaving her last will and testament, dated February 25, 1925, by the terms of which she gave the residue of her estate in equal shares to seven children of her deceased husband, absolutely. Charles H. Hollowell, designated in the will as Charles J. Hollowell, was one of these residuary legatees.

At the audit before STEARNE, J., a written assignment, executed by Charles H. Hollowell to Murray Schneck, was presented, purporting to convey to the assignee a first and prior interest, to the extent of $750, in and to the share of Charles H. Hollowell in the estate of the decedent. Charles H. Hollowell, the assignor and residuary legatee, resisted the claim on the ground of fraud.

The claimant was allowed from the distributive share of Charles H. Hollowell the sum of $250, with interest thereon at the rate of 6% from June 23, 1933, which is the amount the auditing judge found that he received from the claimant. The claimant filed exceptions to the adjudication; they were dismissed, and the adjudication confirmed absolutely by the court in banc. The claimant appealed.

Charles H. Hollowell had endeavored on several occasions to obtain a loan on his interest in the estate. As the result of an advertisement, he called upon a Mr. James in the Real Estate Trust Building, Philadelphia, and made an application for a loan of $500 on his interest. On June 23, 1933, James took Hollowell to New York, where they met J. L. Rosenberg to whom James had sent Hollowell's application, and who had made an investigation of the estate and Hollowell's interest therein. Rosenberg acted in the transaction for Murray Schneck, the claimant. When Hollowell arrived, he was taken into Rosenberg's office. He executed the assignment and was given only $250, although his application was for a loan of $500. He testified that he was paid in five twenty-dollar bills and fifteen ten-dollar bills, and that on the way home he paid James for his services. Hollowell said he understood that he was to receive a loan, and he asked Rosenberg what the $750 in the assignment meant, and was told that "times are so that I have to have that to insure interest." The assignment purports to have been acknowledged before a notary public, and sets forth a consideration of one dollar, and other good and valuable consideration. It is an absolute assignment to the extent of $750 of Hollowell's interest in the Claudine W. Hollowell estate. It is rather lengthy and in legal verbiage, and was prepared by an attorney for Rosenberg. Rosenberg testified that he explained the assignment to Hollowell, that the latter read it carefully, and that James was present. James, who accompanied Hollowell to Rosenberg's office in New York and remained, according to Hollowell, in the outer office during the transaction, was not called to testify, nor was the notary public who was supposed to have taken Hollowell's acknowledgment. Hollowell testified that he and Rosenberg were alone at the time of the execution of the assignment and the payment of the $250.

The assignment was not witnessed. Rosenberg testified that he paid Hollowell in cash, having had a $750 check cashed for the purpose before Hollowell's arrival. Rosenberg also testified that he paid Hollowell $500, or in excess thereof, retained $50 for himself, gave James $37.50, paid the recorder of deeds of Philadelphia county $3, paid an attorney $25 for the preparation of the assignment, and that the balance of the $750, to wit, $134.50, was for his client. When asked as to what became of the balance, Rosenberg testified that his client would get that on the payment of the assigned interest. However, he had cashed a $750 check, which he said included the balance that was to be paid to his client. His testimony also shows that the $3 for the recording of the assignment was forwarded by a check; it did not come out of the $750 in cash, unless the balance was redeposited. Rosenberg took no receipt from Hollowell for the amount which he may have paid him.

From the evidence, the auditing judge found that Hollowell's intention was merely to secure a loan of $500, as set forth in his application made to James and sent to Rosenberg; that Hollowell was induced to execute the assignment through fraud and deceit; that there was no real and bona fide transaction wherein Hollowell, for an agreed consideration, conveyed and assigned his interest to the extent of $750, absolutely, and that he did not intend to do so; that, while Hollowell executed the assignment without duress, nevertheless, once his signature was obtained, Rosenberg gave him, without receipt and without any of the ordinary indices of a bona fide business transaction, whatever sum of money Rosenberg chose to give him; that Rosenberg did not pay Hollowell $500, or a sum in excess of $500, but that, on the contrary, all that Hollowell received was the sum of $250 in cash; that the sum of $250 in cash, which Hollowell received, was not by way

of agreed consideration for an assignment of his interest to the claimant to the extent of $750; that Rosenberg, the agent for Murray Schneck, the assignee, did not act in good faith in securing the assignment; that the assignment was obtained and the money paid by artifice and fraud; and that Hollowell was tricked into conveying an absolute interest of $750 for $250 in cash.

The auditing judge held that the whole transaction was "tainted with fraud, deceit, and overreaching," and that the assignment was invalid and ineffectual to convey any interest of Hollowell in the estate of Claudine W. Hollowell, deceased. The findings of fact by the auditing judge, when supported by evidence or reasonable inferences therefrom, have the effect of a verdict of a jury, and will not be reversed, especially if the decision depends upon the testimony of witnesses whom the judge saw and heard. Kahle's Estate, 307 Pa. 212, 160 A. 857.

The facts in this case, and the inferences to be drawn therefrom, clearly justify the findings and the conclusions of the auditing judge, and he properly held that the assignment was invalid and ineffectual, and that there was intrinsic fraud in the entire transaction.

Appellant contends that, under the parol evidence rule, the assignment must be sustained. There is no merit in this contention, as a contract or assignment obtained through fraud may be attacked, and parol evidence is admissible to strike it down and invalidate it, just as though it had never been in existence. Feuerstein v. New Century Realty Co. et al., 304 Pa. 271, 156 A. 110. In the case of Miller v. Central Trust & Savings Co. et al., 285 Pa. 472, 482, 132 A. 579, 582, Mr. Justice KEPHART, speaking for the Supreme Court, said: "But the gravamen of this case is fraud through misrepresentations, and we said in Gianni v. Russell & Co., supra [281 Pa. 320, 126 A. 791], that fraud, accident or mistake as the basis of the execution of an in-

strument may be shown. But where equity sets aside or reforms an instrument on any of these grounds, parol evidence is admissible though it may vary or contradict the terms of the writing: Martin v. Berens, 67 Pa. 459, 463."

Assignments of interests in estates have frequently been sustained, even though the bargain was unconscionable because of the gross inadequacy of the consideration. In such cases, however, there was no fraud, bad faith, oppression, overreaching, or unfair dealing. See Singer's Estate, 217 Pa. 295, 66 A. 548; Jackson's Estate, 203 Pa. 33, 52 A. 125; Whelen v. Phillips, 151 Pa. 312, 25 A. 44; Phillips's Estate, 205 Pa. 511, 55 A. 212; Richardson's Estate, 236 Pa. 136, 84 A. 670; Carter et al. v. Martin, 307 Pa. 515, 162 A. 220. In the case at bar there was intrinsic fraud, and the assignment was invalid to effectuate a fraudulent purpose.

It is clear that Hollowell made his application for a loan of $500. This application Rosenberg had, and he therefore knew of Hollowell's desires and intentions. Without communicating to Hollowell anything to the contrary, but allowing him to act upon the assumption that he was to obtain a loan of $500 in accordance with the application, Rosenberg had Hollowell execute an absolute assignment of his interest to the extent of $750 in the Claudine W. Hollowell Estate for a consideration recited therein as "One Dollar, and other good and valuable consideration." This took place in the privacy of his own office, no one being present other than himself and Hollowell. After the execution of the assignment under these circumstances, Rosenberg then turned over to Hollowell, a man described by the auditing judge as middle aged, sadly crippled, and of moderate mentality and education, the sum of $250.

The findings and conclusions of the court below are warranted by the evidence.

Decree is affirmed. Appellant to pay the costs.